# IN THE COURT OF APPEALS OF IOWA

No. 18-1564
Filed October 23, 2019

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MICHAEL JAMES SYKES,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Cheryl Traum (motion in limine) and Christine Dalton (trial), District Associate Judges.

Michael Sykes appeals his conviction of assault causing bodily injury. **AFFIRMED.**

John O. Moeller, Davenport, for appellant.

Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Mullins and May, JJ.

**MULLINS, Judge.**

Michael Sykes was charged by trial information with child endangerment and domestic abuse assault causing bodily injury. The minutes of evidence and attachments alleged Sykes assaulted his girlfriend, K.M., in a hotel room while she was holding the couple's nine-month-old child. Sykes's brother discovered K.M. and called 911. Officer Matthew Stombaugh responded to the scene, and K.M. made statements to him implicating Sykes, which were apparently captured by Stombaugh's squad car recording system. Prior to trial, Sykes filed a motion in limine requesting that the court prohibit the presentation of evidence concerning the caller's statements during the 911 call and K.M.'s statements to Stombaugh; Sykes argued the presentation of such evidence would violate his Sixth Amendment right of confrontation.[1] At a subsequent hearing, Sykes also noted there might "also be a hearsay issue" but did not make any specific argument, instead taking the position that the confrontation argument "resolves the issue about the 911 tape." The arguments at the hearing were limited to the 911 recording, as the parties agreed the State would not attempt to admit the recording from Stombaugh's squad car at trial. The court ultimately ruled that the statements made in the 911 audio recording were nontestimonial in nature and were therefore not barred by the Sixth Amendment.

The matter proceeded to a bench trial. The State called the dispatcher who received the 911 call as a witness and offered a recording of the call as an exhibit. Sykes objected on confrontation and hearsay grounds. The State stood by its

[1] Neither K.M. nor the caller were to testify at trial.

earlier arguments as to confrontation. As to hearsay, the State argued the evidence fell within several exceptions to the rule against hearsay. The court conditionally admitted the recording, subject to its subsequent review of its contents.

The State also called Stombaugh as a witness. He testified that, upon his arrival at the hotel, he scanned the parking lot for a suspect, then proceeded to the room in which K.M. was located. When he entered, he could smell blood and alcohol, and he observed "blood pretty much all over the place in th[e] room"; some of the blood was fresh and some of it was dried. K.M. was very emotional, and Stombaugh observed her face to be extremely swollen, she had fresh cuts, and blood was still dripping from a cut on her forehead. Sykes objected to Stombaugh testifying as to any statements K.M. made to him on confrontation and hearsay grounds. As to hearsay, the court ruled K.M.'s statements to Stombaugh amounted to present-sense impressions and excited utterances and, therefore, were not prohibited by the rule against hearsay. The court did not rule on the confrontation objection. Stombaugh then testified K.M. advised him "her boyfriend, Michael Sykes, beat her up." On cross-examination, Stombaugh admitted the purpose of his questioning of K.M. was for "making a report and later prosecution." Thereafter, defense counsel renewed his objection to Stombaugh's testimony on confrontation grounds. The court overruled the objection, noting the questioning had several purposes, including "determining safety of other people and himself and herself."

Following the presentation of the State's evidence, Sykes moved for judgment of acquittal. The court reserved ruling pending its review of the 911 audio

recording. In its subsequent written order, the court implicitly ruled the 911 audio recording was admissible. The court granted Sykes's motion for judgment of acquittal as to the child-endangerment charge but found Sykes guilty of the lesser-included offense of assault causing bodily injury on count two. Following the imposition of sentence, Sykes appealed.

On appeal, Sykes argues the court erred in its rulings on his confrontation and hearsay challenges to the admissibility of the audio recording and Stombaugh's testimony concerning K.M.'s statements. Sykes also challenges the sufficiency of the evidence supporting his conviction.

We begin with the argument concerning Sykes's Sixth Amendment right of confrontation as to the 911 call. We review claims of a confrontation violation de novo. *State v. Kennedy*, 846 N.W.2d 517, 520 (Iowa 2014). "The Sixth Amendment to the United States Constitution guarantees that, 'in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *State v. Schaer*, 757 N.W.2d 630, 635 (Iowa 2008) (ellipsis in original) (quoting U.S. Const. amend. IV). "[O]nly 'testimonial statements' of the sort that 'cause the declarant to be a "witness" within the meaning of the Confrontation Clause' are subject to the constraints of the constitutional provision." *Id.* (quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006)). "If a hearsay statement made by a declarant who does not appear at trial is testimonial, evidence of that statement is not admissible under the Confrontation Clause unless the declarant is unavailable to testify at trial and the defendant had a prior opportunity for cross-examination." *Id.*

Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis*, 547 U.S. at 822.

Here, the 911 caller immediately reported his location and requested the assistance of medics and police. The caller was frantic, and he indicated a current effort to assist an injured individual. When the dispatcher asked what happened, the caller reported he heard screaming coming from the hotel room and stated his brother came out of the room, after which he found his brother's girlfriend beaten up. The dispatcher requested the location of the suspect, and the caller reported he was in the parking lot. The dispatcher then requested information about the suspect and whether he had weapons. The caller identified the suspect as Sykes and stated he probably had weapons. The dispatcher asked for a physical description, which the caller provided. The dispatcher directed the caller to lock the door to the room in case Sykes returned. The dispatcher then transferred the call to medical personnel, who asked what happened. The caller responded, "Mike Sykes beat his girlfriend." The caller passed the phone to another individual, who reported a nurse was on the scene tending to the victim. The original caller got back on the line, after which medical personnel requested information concerning the victim's injuries and status. Medical personnel then questioned the caller regarding Sykes's location for the purpose of ensuring "he is not around and being violent when our paramedics get there." Medical personnel then continued

questioning the caller regarding the victim's condition and gave him instructions on tending to the victim until help arrived.

Generally speaking, 911 calls do not amount to testimonial statements—"a 911 call is ordinarily designed primarily to describe current circumstances requiring police [or medical] assistance." *Id.* at 827. The question of testimoniality "is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Ohio v. Clark*, 135 S. Ct. 2173, 2180 (2015) (alteration in original) (quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)). Upon our de novo review, we answer that question in the negative. We specifically agree with the district court in its limine ruling that the conversations were aimed at eliciting "information from the caller that would assist first responders as they arrived on scene," "how the victim sustained her injuries, the nature and extent of the victim's injuries, the security of the victim and scene, and the identity, location, and potential dangerousness of the suspect." We affirm the court's conclusion "that the primary purpose of the interrogation was to enable police and first responders to assist in an ongoing emergency," and the statements were therefore not barred by the Sixth Amendment. *See, e.g.*, *State v. Walker*, No. 18-0549, 2019 WL 476527, at *2 (Iowa Ct. App. Feb. 6, 2019) (finding no confrontation violation where primary purpose of call was to seek immediate emergency help); *State v. Williams*, No. 16-1815, 2017 WL 6033874, at *2 (Iowa Ct. App. Dec. 6, 2017) (finding no violation where 911 call's primary purpose "was to enable the police to meet an ongoing emergency"); *State v. Moore*, No. 10-1283, 2012 WL 3194116, at * 2 (Iowa Ct. App. Aug. 8, 2012) ("We conclude the district court correctly determined the

statements in the 911 call and those given to the responding emergency personnel and police officer are nontestimonial. The statements were in the context of seeking help for injuries and protection from Moore, not as part of a police investigation.").

The admissibility of the statements thus turns on our rules of evidence. *See Clark*, 135 S. Ct. at 2180. On appeal, Sykes variously labels the statements made in the 911 audio recording as inadmissible hearsay. We find his formulation of the argument insufficient to facilitate our review. In any event, we find no legal error in the district court's conclusion that the statements made in the phone call are excepted from the rule against hearsay as present-sense impressions and excited utterances under Iowa Rule of Evidence 5.803(1) and (2). *See In re Det. of Tripp*, 915 N.W.2d 867, 873 (Iowa 2018) (noting appellate review of hearsay rulings is for legal error). We affirm on that issue without further opinion. *See* Iowa Ct. R. 21.26(1)(a).

Given our conclusions as to the 911 recording, we find it unnecessary to address whether the admission of evidence concerning K.M.'s statements to Stombaugh was improper. The primary substance of both items of evidence— namely that Sykes was K.M.'s attacker—was identical and cumulative, and we find beyond a reasonable doubt that any error in admitting the evidence as in violation of confrontation rights or as hearsay was harmless given the propriety of the court's rulings on the admissibility of the 911 recording. *See State v. Elliott*, 806 N.W.2d 660, 669 (Iowa 2011) (discussing nonconstitutional harmless-error analysis); *State v. Trudo*, 253 N.W.2d 101, 107 (Iowa 1977) (discussing constitutional harmless-error analysis).

Finally, Sykes vaguely challenges the sufficiency of the evidence underlying his conviction. However, his argument is premised on his position that the complained-of evidence should have been excluded. Having concluded the 911 recording was admissible and viewing the evidence in the light most favorable to the State, *see State v. Ortiz*, 905 N.W.2d 174, 180 (Iowa 2017), we conclude the State provided substantial evidence to support each element of the crime of which Sykes was convicted. *See State v. Wickes*, 910 N.W.2d 554, 563 (Iowa 2018). We affirm Sykes's conviction.

**AFFIRMED.**